200 So.2d 916 (1967)
DAVIS-WOOD LUMBER COMPANY, Plaintiff-Appellant,
v.
William E. DeBRUEYS et al., Defendant-Appellee.
No. 7100.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
*917 Phillip E. Pfeffer, Covington, for appellant.
William J. Jones, Jr., of Barranger, Barranger & Jones, Larry J. Green, Covington, Delos R. Johnson, Jr., of Johnson & James, Franklinton, Robert R. Thorne, Slidell, Julian J. Rodrigue, Covington, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
This appeal stems from a foreclosure proceeding on a conventional mortgage instituted in St. Tammany Parish. The sequence of events giving rise to the original action is as follows:
Ivan Goodwin purchased Lots 17, 18, 19 and 20 of Square 21, Chincuba Subdivision, St. Tammany Parish, Louisiana on August 13, 1964. Subsequently, Goodwin, as owner and contractor, and without benefit of a recorded contract purchased materials from Davis-Wood Lumber Company and proceeded to construct a house on the above mentioned lots. On November 17, 1964, Goodwin executed a mortgage on the above lots in the sum of $9,500. On March 6, 1965, Goodwin executed a second mortgage on the property in favor of William E. De-Brueys. On March 29, 1965, appellant filed a materialman's lien against said property, alleging delivery of materials in the amount of $4,864.23 to the premises between the dates of June 10, 1964 and February 20, 1965. The affidavit evidencing the materialman's privilege was filed well within the requisite 60-day period.
The holder of the first mortgage, Citizens Finance Company of Covington, Inc., instituted executory proceedings which resulted in the sale of the property by the Sheriff to William E. DeBrueys, by Sheriff's sale dated April 20, 1965, for the sum of $11,500. In connection with the foreclosure and pursuant to the Sheriff's order, the Clerk of Court cancelled the Davis-Wood materialman's lien. On July 8, 1965 DeBrueys executed a mortgage in favor of Citizens Finance Company of Covington, *918 Louisiana. This mortgage covered the four lots, but on October 19, 1965, Lots 19 and 20 were released from the mortgage. By virtue of a sale and resale on October 19, 1965 DeBrueys granted a vendor's lien and mortgage for $7,800 on Lots 19 and 20 to St. Tammany Homestead Association.
On March 24, 1966 Davis-Wood Lumber Company filed suit against the Sheriff and Clerk of Court of St. Tammany Parish seeking a reinstatement of lien rights and damages. Also made defendants were Ivan Goodwin, the original owner of the property; William E. DeBrueys, the second mortgagee-purchaser; and the subsequent mortgagees, Citizen's Finance Company of Covington and St. Tammany Homestead Association.
In its petition, the Lumber Company alleged:
1) The cancellation of its lien was improvident and of no effect, and that said lien is in full force and effect and "is superior, not only to the mortgage of Nov. 17, 1964, but to another mortgage granted by Goodwin in favor of William E. DeBrueys on March 6, 1965, and any and all subsequent encumbrances."
2) The property should be seized and sold to satisfy its lien.
3) In the alternative, there should be a money judgment against Goodwin and in favor of the Lumber Company.
The various defendants filed exceptions of no cause of action, no right of action, and estoppel which were sustained and resulted in the dismissal of plaintiff's suit.
The law applicable to the determination of the ranking of materialman's liens is found in LSA-R.S. 9:4801:
"A. Every * * * furnisher of material * * * who * * * furnishes material for the * * * construction * * * of immovable property * * * with the consent * * * of the owner thereof * * * has a privilege * * * upon the land * * *.
B. * * * the privilege given by Sub-Section A of this Section, if evidenced as provided in the applicable provisions of this Sub-Part, is superior to all other claims against the land and improvements except: * * * mortgages if * * * mortgages exist and have been recorded before the work or labor has begun or any material has been furnished. * * *"
Due to the fact that the record contains no evidence of recordation of a construction contract, LSA-R.S. 9:4812 is relevant to the disposition of this case.
LSA-R.S. 9:4812:
"When the owner * * * undertakes the work of construction * * * for which no contract has been entered into, or when a contract has been entered into, but has not been recorded * * * then any person furnishing * * * material * * * on said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, a copy of his estimate or an affidavit of his claim * * * which recordation if done within sixty days after the date of the last delivery of all materials upon the said property or the last performance of all services or labor upon the same, by said furnisher of material * * * shall create a privilege upon the building or other structure and upon the land which it is situated. * * *
The said privilege shall be superior to all other claims * * * except * * * a bona fide mortgage * * * if the mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. * *"
As was noted above, the Lumber Company filed the affidavit evidencing its materialman's privilege within the requisite *919 60-day period. Where building materials have been delivered to a site prior to the recordation of a mortgage on the property, a subsequently filed materialman's privilege primes a prior recorded mortgage. Highland Lumber & Supply Co. v. Young, La.App., 38 So.2d 638; Brown Brokerage Co. v. Greely Plumbing Co., La.App., 135 So.2d 551; Capital Bank & T. Co. v. Broussard Paint & Wallpaper Co., La. App., 198 So.2d 204.
It is incumbent upon the Sheriff to rank mortgages and privileges. Article 2376 of the Code of Civil Procedure provides:
"The sheriff shall give the purchaser a release from the mortgage, lien, or privilege of the seizing creditor, and from all inferior mortgages, liens, and privileges, and he shall direct the recorder of mortgages to cancel their inscriptions in so far as they affect the property sold." (Emphasis ours)
LCC articles 3371 and 3372 provide that "inscriptions of mortgages and privileges are erased by the consent of the parties interested and having capacity for that purpose" * * * or "by virtue of a judgment ordering said erasure." Since the Lumber Company's lien is superior to the mortgage of the seizing creditor, Citizen's Finance Company, and because said lien was not removed from the records via a judgment or through the consent of the Lumber Company, said lien was erroneously cancelled.
The defendants allege that a reinstatement of the lien would cause undue violence to the "public records doctrine" espoused in McDuffie v. Walker, 125 La. 152, 51 So. 100. This problem is squarely met by Zimmer v. Fryer, 190 La. 814, 183 So. 166 which deals with a suit to annul a cancellation of a mortgage on the ground that the cancellation was procured by fraud. In the opinion, written by Chief Justice O'Niell, it is stated:
"The doctrine that a person in good faith buying real estate, or acquiring a mortgage or lien on it, may rely upon the public records in determining the ownership of the property, and its freedom from mortgages or liens, does not protect one who, in good faith, buys real estate or acquires a mortgage on real estate on which a prior mortgage has been cancelled fraudulently or without the consent of the holder of the mortgage or of the mortgage note or notes. The Civil Code, in articles 3371 and 3372, declares that a mortgage or lien can be cancelled only with the consent of the holder of the mortgage or mortgage note or notes, or by virtue of a judgment rendered against him, ordering the cancellation. In Freeland v. Carmouche, 177 La. 395, 405, 406, 148 So. 658, 661, 662, the court reviewed the decisions on the subject, and said:
"The rule seems arbitrary, but it is now well settled by the decisions of this court, that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record. Dreux, Executor v. Ducournau, 5 Mart.,O.S., 625; Lafarge v. Morgan, 11 Mart.,O.S., 462, 527; Macarty v. Landreaux, 8 Rob. 130; Hennen v. Sewell, 8 Rob. 216; Delavigne v. Gaiennie, 11 Rob. 171, 173; Mrs. De St. Romes v. Widow Blanc, 20 La.Ann. 424, 96 Am.Dec. 415; Horton v. Cutler, 28 La.Ann. 331; Mechanics' Building Association v. Ferguson, 29 La. Ann. 548, 550; Morris v. Cain's Executors, 34 La.Ann. 657, 665; Levy v. Desposito, 133 La. 126, 62 So. 599; Gallagher v. Conner, 138 La. 633, 70 So. 539; Fisher v. Trimble, 161 La. 343, 108 So. 666." (Emphasis ours)
The rationale of the Zimmer case is discussed and approved in LaCour v. Ford Investment Corporation, La.App., 183 So.2d 463, National Acceptance Co. of America *920 v. Wallace, La.App., 194 So.2d 194, and Bornes v. Vernon, La.App., 64 So.2d 18.
The contention that the reinstatement of a cancelled mortgage or lien is applicable only to cancellations involving fraud is untenable. Our jurisprudence reveals cases in which mortgages or liens cancelled due to error alone have been reinscribed. Analogous to the present case is Southern Casualty Co. v. Ross et al., 179 La. 145, 153 So. 673 which involved first and second mortgages. The first mortgage was refinanced via cancellation and the execution of a new mortgage. The mortgage certificate did not disclose a second mortgage due to the fact that it was not entered on the index in the mortgage office. Consequently, the court held that the second mortgage gained priority. See also Mulling v. Jones, 164 La. 894, 114 So. 725.
A consideration of the above cases and LCC articles 3371 and 3372 in conjunction with the unambiguous language of the Zimmer case (see italicized portions) leads to the inescapable conclusion that a mortgage or lien cancelled through error, as well as fraud, must be reinstated.
The defendants urge that the Lumber Company is now estopped from asserting its lien because said lienholder allegedly received notice of the Sheriff's sale through publication in the "St. Tammany Farmer" and that the Lumber Company's remedy was intervention under CCP article 1092, the pertinent portion of which provides:
"A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. * * *" (Emphasis ours)
It should be observed that the above article employs the term "may", which is permissive rather than mandatory. Hibernia Homestead and Savings Ass'n. v. Fletcher, La.App., 181 So.2d 815. The holder of a materialman's lien is not required to intervene in the foreclosure proceedings of an inferior mortgage. His rights are not lost by the alienation by public sale. The following articles of the Code of Civil Procedure provide a means by which a party in the Lumber Company's position, that is, a party having a superior privilege on property seized and sold at a sheriff's sale, is protected. A means of recourse is also provided for the innocent third party purchaser and the seizing creditor.
"Art. 2371. Effect of adjudication
The adjudication transfers to the purchaser all the rights and claims of the judgment debtor as completely as if the judgment debtor had sold the property."
"Art. 2374. Property subject to superior mortgage; payment of price
If there is a mortgage, lien, or privilege on the property superior to that of the seizing creditor, the purchaser shall pay to the sheriff only that portion of the sale price which exceeds the amount of the superior mortgage, lien, or privilege."
"Art. 2378. Enforcement of mortgage or privilege superior to that of seizing creditor
When the purchaser fails to pay a mortgage superior to the mortgage, lien, or privilege of the seizing creditor, the superior mortgage may be enforced under any of the applicable provisions of Articles 3721 through 3743.
When the purchaser fails to pay a lien or privilege superior to the mortgage, lien, or privilege of the seizing creditor, the superior lien or privilege may be enforced in an ordinary proceeding against the purchaser or, if the latter has sold the property, against the then owner thereof."
"Art. 2379. Rights of buyer in case of eviction
The purchaser who has been evicted from property sold under a writ of fieri facias shall have his recourse for reimbursement against the judgment debtor *921 and the seizing creditor. If judgment is obtained against both, the purchaser shall issue execution first against the judgment debtor, and if his judgment remains unsatisfied, he may issue execution against the seizing creditor."
"Art. 2381. Action by seizing creditor who has been compelled to reimburse purchaser
The seizing creditor may recover from his judgment debtor whatever he has had to pay to the purchaser who has been evicted."
Accordingly, for the above and foregoing reasons the judgment of the district court sustaining exceptions of no cause of action, no right of action and estoppel is reversed and set aside and this matter is herewith remanded for trial on the merits in accordance with the views herein expressed. Costs of this appeal are to be borne by appellees with final costs to await final determination.
Reversed and remanded.