HALL, Judge.
McL. Development Co., Inc. brought suit seeking a judgment ordering the Clerk of Court and Ex-Officio Recorder of Mortgages of Caddo Parish to cancel a release of its vendor’s lien and mortgage and to reinstate the vendor’s lien and mortgage on the public records. Named defendants were Dwight D. Pyburn, Clerk of Court; Hamilton D. Harper, Jr., grantor of the vendor’s lien and mortgage in favor of plaintiff, and grantor of a subsequent $25,-000 mortgage; and the unknown holder of the $25,000 note secured by the subsequent mortgage.
The Clerk of Court filed an answer in the nature of a general denial. Harper neither appeared nor answered. Builders Investment Enterprises, Inc., as holder for valuable consideration of the note secured by the $25,000 mortgage, answered asserting that its mortgage is entitled to rank in preference and priority ahead of the claims of plaintiff. Defendant relies primarily on the public records doctrine and also pled as affirmative defenses (1) payment; (2) no-vation; and (3) estoppel. After trial on the merits, judgment was rendered rejecting plaintiff’s demands and plaintiff appealed. We affirm the judgment of the district court.
The facts are not in dispute. On May 26, 1969, McL. Development Co., Inc., sold a lot in Pine Forest Subdivision, Unit No. 3, to Hamilton D. Harper, Jr., a building contractor, for the price of $4,581.82, payable $10 cash and the balance represented by a note secured by a vendor’s lien and mortgage in the sum of $4,571.82, which vendor’s lien and mortgage was recorded in the mortgage records of Caddo Parish on June 18, 1969.
Subsequently, on January 8, 1970, Harper executed and recorded a special mortgage in favor of “Future Holder” in the amount of $25,000, affecting the same property.
*298 On January 17, 1970, Harper gave plaintiff his check representing payment in full of the note secured by plaintiff’s vendor’s lien and mortgage. Plaintiff, through its president, Harvey McLean, Jr., delivered the note to Harper. According to McLean, Harper advised him that due to a new procedure he was following in obtaining his interim financing for the construction of a residence on the lot, he could not then cover the check and Harper asked McLean to hold the check for a few days until he completed his interim financing.
On January 19, 1970, the note was presented to the Clerk of Court and the vendor’s lien and mortgage was canceled from the mortgage records.
On January 22, 1970, Builders Investment Enterprises, Inc., relying on a mortgage certificate and its attorney’s title opinion showing the $25,000 mortgage as a first mortgage against the property, acquired the $25,000 note from Harper and advanced the sum of $16,000 to him.
On January 29, 1970, twelve days after receiving the check from Harper, McLean, not having heard from Harper and being unable to locate him, took the check to the American Bank & Trust Company on which it was drawn and presented it for payment. The check was stamped “insufficient funds” at that time and was not paid. Suit was filed on February 3, 1970.
The records of American Bank & Trust Company revealed that from the date Harper’s check was issued until Harper’s checking account became dormant in February, the account on which the check was drawn never showed a sufficient balance to pay the check at the end of any day during that period. However, the records revealed that between the date on which the check was issued and January 30, 1970, deposits totaling $31,543.45, were made to the account, including among other smaller deposits, $5,000 on January 19, $9,304.12 on January 21, and $16,489.33 on January 22. During this same period checks totaling $31,686.13, were paid from the account on a first-in, first-paid basis, with many checks being marked insufficient funds and returned during that same period.
This case is presented to the court in the posture of a contest between plaintiff, McL. Development Co., Inc. and defendant, Builders Investment Enterprises, Inc., as to the effectiveness and/or ranking of their respective securities against the property in question, with the rights of no other parties being involved.
Defendant relies on the public records doctrine enunciated in McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909) and its progeny, having acquired its mortgage in good faith relying on the public records which showed it to be a first mortgage against the subject property.
Plaintiff contends that this case comes within an exception to the public records doctrine in that its vendor’s lien and mortgage was canceled through fraud, error and mistake, citing Zimmer v. Fryer, 190 La. 814, 183 So. 166 (1938); Davis-Wood Lumber Company v. DeBrueys, 200 So.2d 916 (La.App.1st Cir. 1967); National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App.2d Cir. 1967); and LSA-Civil Code Articles 3371 and 3372.
The cases cited by plaintiff stand squarely for the proposition that cancellation of a mortgage through fraud, error or mistake without the knowledge or consent of the holder does not deprive the holder of his security even as against third parties dealing with the property in good faith in reliance on the public records. In Zimmer, the Supreme Court held:
“The doctrine that a person in good faith buying real estate, or acquiring a mortgage or lien on it, may rely upon the public records in determining the ownership of the property, and its freedom from mortgages or liens, does not protect one who, in good faith buys real estate or acquires a mortgage on real estate on which a prior mortgage has been can-celled fraudulently or without the consent *299 of the holder of the mortgage or of the mortgage note or notes. The Civil Code, in articles 3371 and 3372, declares that a mortgage or lien can be cancelled only with the consent of the holder of the mortgage or mortgage note or notes, or by virtue of a judgment rendered against him, ordering the cancellation. In Freeland v. Carmouche, 177 La. 395, 405, 406, 148 So. 658, 661, 662, the court reviewed the decisions on the subject, and said:
‘The rule seems arbitrary, but it is now well settled by the decisions of this court, that a cancellation of a mortgage by the recorder without the knowledge or consent of the holder of the negotiable mortgage-note does not deprive him of his security, even with regard to a third party dealing with the property on his faith in the public record. Dreux, Executor v. Ducournau, 5 Mart., O.S., 625; Lafarge v. Morgan, 11 Mart., O.S., 462, 527; Macarty v. Landreaux, 8 Rob. 130; Hennen v. Sewell, 8 Rob. 216; Delavigne v. Gaiennie, 11 Rob. 171, 173; Mrs. De St. Romes v. Widow Blanc, 20 La.Ann. 424, 96 Am.Dec. 415; Horton v. Cutler, 28 La.Ann. 331; Mechanics’ Building Association v. Ferguson, 29 La.Ann. 548, 550; Morris v. Cain’s Executors, 34 La. Ann. 657, 665; Levy v. Desposito, 133 La. 126, 62 So. 599; Gallagher v. Conner, 138 La. 633, 70 So. 539; Fisher v. Trimble, 161 La. 343, 108 So. 666.’ ”
The Zimmer case involved the cancellation of mortgages on the basis of a release prepared by a notary public who had his stenographer sign the release as holder and owner of the mortgage notes when, as a matter o-f fact, she was neither. The notes were not produced by the stenographer and the court further held that it was incumbent upon the purchaser to have the notes produced and paraphed for identification with the release which was apparently executed at the same time the purchase was consummated.
In the Freeland case, the mortgage was fraudulently canceled when the mortgagor presented to the recorder a sham note, prepared by the mortgagor, which was a duplicate in all respects of the. true original mortgage note.
In the Davis-Wood Lumber Company case, the court held a materialmen’s lien erroneously canceled by order of the sheriff after a foreclosure proceeding, must be reinstated in a contest between the holder of the materialmen’s lien and a party acquiring a subsequent mortgage relying on the cancellation of the lien which appeared in the public records.
In the National Acceptance case, the court recognized the validity and ordered the enforcement of a mortgage which had been canceled on the basis of a court order in a mandamus suit based on a false and fraudulent affidavit, as against an innocent third party purchaser of the property who relied on the cancellation shown on the public records.
The instant case does not fall within the rule enunciated in Zimmer and the other cited cases. Plaintiff has failed to either allege or prove fraud, mistake, error, or lack of consent, in the cancellation of its vendor’s lien and mortgage.
LSA-Code of Civil Procedure Article 856 provides:
“In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.”
 Plaintiff’s petition simply alleges the factual sequence of events including an allegation that petitioner surrendered the note to Harper in the belief that the check would be paid by the bank upon presentation. These allegations do not amount to a plea of fraud or mistake as to the cancellation of the vendor’s lien and mortgage, nor does the evidence support a finding that the cancellation was effected through fraud or mistake or without the knowledge and consent of plaintiff. When the note was *300 delivered to Harper, plaintiffs president knew, or as an experienced businessman should have known, that Harper would present the note to the Clerk for cancellation of the vendor’s lien and mortgage as a necessary prerequisite to obtaining his interim construction financing. By his own testimony, plaintiff’s officer knew the check was not good at the time he gave Harper the note. It cannot be said that the cancellation was effected without the knowledge and consent of the holder nor can it be said that the cancellation was effected through fraud, mistake or error.
McLean in effect consented to the cancellation by delivering the note to Harper. The central element and codal basis on which the Zimmer and related cases were decided was lack of consent by the holder as required by LSA-Civil Code Article 3371. This element, lack of consent by the holder, is not present in the instant case.
In view of the foregoing conclusions, it is unnecessary to consider the additional defenses raised by defendant.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.